Thomas H. Allen, State Bar #11160
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: tallen@allenbarneslaw.com

Attorneys for Debtors

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | CHAPTER 7 |
| IGOR KRAVCHENKO and ELENA ADREANA DALI KRAVCHENKO fka Yelena Kravchenko, | Case No. 2:18-bk-15371-MCW |
| Debtors. | **DEBTORS' STATEMENT OF POSITION REGARDING DOCKET ENTRY 24** |

Igor Kravchenko and Elena Adreana Dali Kravchenko fka Yelena Kravchenko ("Debtors"), by and through undersigned counsel, hereby submit this *Statement of Position Regarding Docket Entry 24*.

## I.  Introduction

The Debtors file this Statement of Position to respond to Leonid Grinberg's ("Grinberg") March 20, 2019 letter (the "Letter") sent to the Court.  The allegations contained in the Letter are either outright false or deliberately misleading.  It is difficult to imagine more inflammatory allegations than those contained in the Letter; in a single paragraph, Grinberg implies that Dr. Kravchenko was investigated by the FBI, the U.S. Attorney's Office, the U.S. Trustee, the OIG, ICE, and the SEC.  In addition to Grinberg's Grishamesque allegations against the Debtors, he also alleges that the Debtors omitted and undervalued a handful of assets on their Bankruptcy Schedules.  The Debtors submit this Statement of Position to correct the record.

/ / /

/ / /

/ / /

## II.    Background

### A.    The Grinberg Lawsuit and Dr. Kravchenko's First Bankruptcy.

Dr. Kravchenko immigrated to the United States from Ukraine in 1992 initially on refugee status, fleeing antisemitism in the former USSR.[1]  After emigrating, Dr. Kravchenko married Tanya Grinberg, the daughter of Leonid Grinberg.  In 2004, Tanya approached Grinberg regarding a potential investment in a business Tanya was starting for a medical supply company, Cunningham Medical Equipment.  The loan was not formally documented, but in exchange for an investment of $100,000, Grinberg would receive equity in Tanya's business.  Ultimately, the business for which Tanya and Dr. Kravchenko received the loan and her marriage to Dr. Kravchenko failed, leading to a divorce in 2009 and Tanya's bankruptcy filed in the Northern District of Illinois case number 10-00203.

When the marriage between Dr. Kravchenko and Tanya began to deteriorate, he moved to Arizona.  After Dr. Kravchenko moved to Arizona, Grinberg sued Dr. Kravchenko in the Cook County Circuit Court, case number 2009-L-008986, and characterized his investment in Tanya's business as a debt.  Dr. Kravchenko hired Leonard Sominsky to represent him in a bankruptcy, which Mr. Sominsky filed on Dr. Kravchenko's behalf on January 30, 2012, case number 2:12-bk-01705.  The bankruptcy petition had the temporary effect of staying the Ginsberg's litigation against Dr. Kravchenko in the Illinois Circuit Court.  However, because no schedules or statements were filed on Dr. Kravchenko's behalf, the case was summarily dismissed on February 23, 2012 [2:12-bk-01705, Dkt. No. 13].  With the automatic stay no longer in place and Dr. Kravchenko lacking counsel, Grinberg's lawsuit moved to judgement on June 12, 2012.

### B.    Global Anesthesia LLC and Dr. Kravchenko's Second Bankruptcy.

In 2009, Dr. Kravchenko and Dr. Saman Farnoush formed Global Anesthesia LLC ("Global").  In 2012, Dr. Kravchenko transferred his interest in Global to his wife and Co-

---

[1] Dr. Kravchenko obtained his United States citizenship in the late 1990s.

Debtor Elena Kravchenko.  Due to Dr. Kravchenko's 2012 bankruptcy, he had a poor credit score and transferring ownership of Global to Ms. Kravchenko ultimately enabled Global to obtain a business loan.  Dr. Farnoush also transferred his interest in Global to his wife, Yulia Brychenko.  Until approximately 2014, Global was a successful medical practice and Dr. Farnoush and Dr. Kravchenko received salaries, and profits were divided to the equity holders of the business, Ms. Kravchenko and Ms. Brychenko.

In 2013, after Grinberg garnished Dr. Kravchenko's bank account and scheduled a debtor's examination, he again consulted Mr. Sominsky to file a bankruptcy on his behalf. Although Dr. Kravchenko would have been a good candidate for a Chapter 11 bankruptcy because of his income and debt levels, his case was filed as a Chapter 13.  During Dr. Kravchenko's bankruptcy a number of strategic choices were made by his counsel that put him at odds with the Chapter 13 Trustee such as failing to include Ms. Kravchenko's interest in Global, failing to include other business interests of Dr. Kravchenko, and questionably characterizing Dr. Kravchenko's amount of unsecured noncontingent debt.  In 2017, the Debtors entered into a settlement with Mr. Sominsky based on his representation of Dr. Kravchenko in his 2013 bankruptcy.  The settlement with Mr. Sominsky is subject to a confidentiality agreement.

After the Court confirmed Dr. Kravchenko's Chapter 13 plan, a dispute over the management of Global developed in the spring of 2014.  As part of the dispute, the parties ultimately decided to wind down the business.  On June 2, 2014, Ms. Brychenko filed suit against the Debtors in the Maricopa County Superior Court case number CV 2014-093763.  In the lawsuit, Ms. Brychenko alleged various torts related to Global's operations and requested an accounting and injunctive relief.  The Maricopa County Superior Court ultimately entered a temporary restraining order preventing the parties from looting the remaining assets of Global.

Because Dr. Kravchenko's bankruptcy was pending when Ms. Brychenko filed suit, the State Court dismissed the lawsuit because of the automatic stay.  Thereafter, on June 24, 2014, Ms. Brychenko filed a Motion for Relief from the Automatic Stay so she could proceed with her lawsuit.  This Court ultimately accepted jurisdiction over the dispute and entered a

temporary restraining order similar to that issued by the Maricopa County Superior Court preventing the parties from looting the assets of Global. After obtaining substitute counsel, the Court entered a Stipulated Order for Dismissal in June 2015, dismissing Dr. Kravchenko's administrative case [2:13-bk-12581 Dkt. 132].

In November 2016, after multiple mediations, the parties settled the Global dispute. As part of the settlement, the Debtors were entitled to collect the receivables paid to Global from healthcare and insurance providers (the "Healthcare Receivables"). [2:14-ap-00591 Dkt. 246, at 13]. Because the TRO was in place, Global failed to cash checks written for the Healthcare Receivables and the Debtors had to request that the healthcare providers and insurers reissue checks. As a result, although the Debtors had personally accounted (including in their 2014 and 2015 taxes) for the Healthcare Receivables, they only received the proceeds in 2018.

C. <u>Circumstances Leading To The Debtors' Current Bankruptcy</u>.

Following the dismissal of Dr. Kravchenko's 2013 bankruptcy, he rededicated himself to developing his anesthesia practice. Dr. Kravchenko worked for Arizona Wellness Anesthesia Group, Inc. ("Wellness Group").[2] Despite Wellness Group's initial success, Dr. Kravchenko faced stiffening competition in providing anesthesia services to surgeons. Further complicating matters, Wellness Group and Dr. Kravchenko's former business associate, Chuck Little, failed to pay Dr. Kravchenko approximately $270,000 for his services. Dr. Kravchenko filed suit against Wellness Group and Mr. Little in August 2018 in the Maricopa County Superior Court (CV2018-096215) alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and fraudulent misrepresentation. Dr. Kravchenko's case is currently stayed. Faced with limited income, substantial tax liability, and business debt related to Dr. Kravchenko's past endeavors, the Debtors filed this case on December 20, 2018.

/ / /

---

[2] Later renamed Arizona Wellness Group Inc.

### III. Discussion

On March 22, 2019, the Grinberg wrote the Court the Letter alleging that the Debtors committed a number of misdeeds and misrepresentations. The Debtors dispute the Grinberg's allegations as follows:

| **Grinberg's Allegations** | **Response** |
| --- | --- |
| "We were advised during that case he self-reported to the [OIG] for violations of the Stark Law because he had been paying cash bribes." | The only interaction that the Debtors have had with the OIG is when Dr. Kravchenko responded to an OIG Request for Information or Assistance in 2016. There is no basis for Grinberg's allegation that Dr. Kravchenko "had been paying cash bribes." Grinberg's allegation of bribery was made for an improper purpose of harassing Dr. Kravchenko and was made without evidentiary support. |
| "He also reported to ICE that he and his father had arranged an improper H1-B visa." | Dr. Kravchenko never reported himself or his father to ICE. Grinberg's allegation implying that Dr. Kravchenko resides in the United States illegally was made for the improper purpose of harassing Dr. Kravchenko and lacks evidentiary support. |
| "He was also caught up in an SEC investigation involving the manipulation of a penny stock." | Dr. Kravchenko was never investigated by the SEC. Two Phoenix stockbrokers did dupe Dr. Kravchenko into purchasing shares of a company called grandparents.com. In 2016, the Securities and Exchange Commission entered a cease and desist order against the two brokers. *See* https://www.sec.gov/litigation/admin/2016/33-10223.pdf. |
| "He claimed Global stopped operating in 2014 yet he has been receiving checks and depositing them into another account he has. As it looks to us he can discharge our debt and keep collecting these checks which does not seem right." | Global *did* stop operating in 2014, as this Court is uniquely aware of. The copies of checks Grinberg includes in his Letter [Dkt. 24, at 4-6] issued in 2018 from Global Anesthesia and United Health Care to the Debtors relate to the Healthcare Receivables. Although the Debtors ultimately cashed the attached checks in 2018 it was income earned (and taxes assessed or reported) from 2014 and 2015. To borrow a tax concept, under the theory of constructive receipt, the checks from the Healthcare Receivables was income, at the latest in November 2016 when the Debtors had the unequivocal right to cash the checks from the Healthcare Receivables, in which case its disclosure still would not be required by the Statement of Financial Affairs. *Bennett v. United States*, 293 F.2d 323, 326 (9th Cir. 1961) ("Income is constructively received only when it is subject to the unfettered command and control of the prospective recipient. Though not reduced to possession, it must be available to the taxpayer without restriction or limitation."). |
| "He went after his former lawyer, Mr. Sominsky, and | The Debtors did receive a settlement from Mr. Sominsky, and the Debtors have amended their Statement of Financial |

| | |
|---|---|
| received a settlement over $80,000 which he has not declared." | Affairs to reflect this fact. The Debtors' mistakenly believed that the confidentiality provision of the settlement obligated the Debtors not to disclose the existence of the settlement with Mr. Sominsky or the payment in their Statement of Financial Affairs. |
| "He has a collection of expensive watches, Rolex and Patek Phillipe." | Dr. Kravchenko did have a collection of Rolex watches, which he was forced to sell in 2014. Attached as Exhibit A are the checks Dr. Kravchenko received in exchange for his watches. The Debtors have never owned a Patek Phillipe. |
| "He also has a large expensive gun collection which he has not mentioned." | The only firearms owned by the Debtors are disclosed on Schedule A/B [Dkt. 16, at 4]. |
| "My daughter told us about women's shoes called Luboutin that sell for $700- thousands of dollars- she is shown wearing those shoes." | The referenced shoes were purchased approximately *eight* years ago and have considerable wear. Similar shoes are frequently listed on eBay or similar websites for fixed prices well below $200. |
| Grinberg also printed out a picture of Ms. Kravchenko's Instagram and with an arrow next to her purse wrote "$4,500." | The purse that Grinberg asserted to be $4,500 is a Guess purse that Dr. Kravchenko purchased new for approximately $80. |
| He has listed our debt as a business debt, which it is not and never was. | In reality, Grinberg paid Dr. Kravchenko's ex-wife $100,000 in exchange for an ownership interest in his daughter's failed business venture. |
| We have been informed he is now receiving cash payments for anesthesia to lessen what his income appears to be. | Baseless. Grinberg's allegation of receiving cash payments was made for an improper purpose of harassing Dr. Kravchenko and was made without evidentiary support. |
| "Summit Anesthesia is supposed to pay IKMD PLLC but it gave him a cashier's check in the attached for $25, 000 made out to him directly." | Each of the partners of Summit Anesthesia received $25,000 in loan proceeds made to Summit Anesthesia. Because Dr. Kravchenko received proceeds as a loan rather than a dividend or salary he did not initially include the payments on his statement of financial affairs. In an abundance of caution, he will amend his Statement of Financial Affairs to disclose the payment. |
| "He had enough in his IKMD [account] in October to write a $64,000 check." Grinberg also includes a copy of the $64,000 check written from an IKMD account to Dr. Kravchenko dated October 8, 2018. | The proceeds from the IKMD check drawn from IKMD's Wells Fargo Bank account were *not* paid to Dr. Kravchenko personally, but were deposited into a separate IKMD business account with MidFirst Bank. Attached as Exhibit B is the MidFirst Bank Statement showing a deposit of $64,000 on October 8, 2018. |

If Grinberg wants to enforce his rights against the Debtors, he should follow the proper channels. Writing an *ex parte* letter rife with hyperbole and half-truths addressed only to the Judge presiding over the Debtors' bankruptcy is hardly the appropriate manner of contesting the Debtors' case. Grinberg, who had counsel at least through 2018, could have filed an action under § 523 or § 727 to protect his claim against the Debtors, but chose not to. Rather than enforce his own rights, Grinberg has attempted to spur the United States Trustee into action by invoking hearsay rumors of investigations by a slew of agencies. Neither the Court nor the United States Trustee should condone such tactics.

## IV.    Conclusion

One thing that the Letter got correct is that this is not Dr. Kravchenko's first bankruptcy, unfortunately. Largely due to the mishandling of his previous Chapter 13 cases, which resulted in a malpractice settlement with his former counsel, Dr. Kravchenko has never received the benefit of a discharge. Now, the Debtors, with new counsel, have in good faith worked with the Chapter 7 Trustee and the United States Trustee to bring their current Chapter 7 to a close. If Grinberg believed that the Debtors filed their bankruptcy improperly, he should have retained counsel to enforce his claims against the Debtors instead of attempting to poison their reputation with the Court.

DATED:  May 3, 2019

**ALLEN BARNES & JONES, PLC**

*/s/  THA 11160*
Thomas H. Allen
1850 N. Central Ave. Suite 1150
Phoenix, Arizona 85004
*Attorneys for Debtors*

**E-FILED** on May 3, 2019, with the
U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have
appeared in the case.

///

///

**COPY** mailed the same date via U.S. Mail to:

Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003-1706

David M. Reaves, Trustee
P.O. Box 44320
Phoenix, AZ 85064-4320

COPY mailed via U.S. Mail and e-mailed the same date to:

BMW Financial Services, NA, LLC Department
AIS Portfolio Services, LP
Acct. No. xxxxxx3751
4515 N. Santa Fe Ave., Dept APS
Oklahoma City, OK 73118
ecfnotices@ascensioncapitalgroup.com

*/s/ Melissa Morgan*

# Exhibit A



**A F. C.**
GENERAL ACCOUNT
10441 N SCOTTSDALE RD.
SCOTTSDALE, AZ 85253

5069

91-2 / 1221   141

DATE 10/31/14

PAY TO THE ORDER OF _Elena Kravchenko_

_Fifteen Thousands and Five Hundred._   DOLLARS

$ 15,500

**CHASE**
JPMorgan Chase Bank, N.A.
www.Chase6.com

103/142

⑆005069⑆ ⑈002⑉ 2445⑈



CASH ONLY IF ALL CheckLock™ SECURITY FEATURES LISTED ON BACK INDICATE NO TAMPERING OR COPYING

**WATCH-U-WANT INC.**
3389 SHERIDAN ST., SUITE 504
HOLLYWOOD, FL 33021-3606
(954) 961-1445

31600

TD BANK, NATIONAL ASSOCIATION
HOLLYWOOD, FL 33021
63-1377/631

12/5/2014

PAY TO THE
ORDER OF      Igor Kravchenko (V)

$ **9,500.00

Nine Thousand Five Hundred and 00/100****************************************************** DOLLARS

Igor Kravchenko
10258 E. Gold Dust Ave.
Scottsdale, AZ 85258

MEMO    Receiving 8966

▲ TAMPER RESISTANT TONER AREA ▲

⑆031600⑆  ⑈3772⑈  5928⑈

© 2011 INTUIT INC. 1-800-433-8810

# Exhibit B

 **MIDFIRST BANK**®

IKMD PLLC
15345 N SCOTTSDALE RD 3063
SCOTTSDALE AZ 85254

### 9150  Basic Business Checking

| | | | |
|---|---|---|---|
| Low Balance: | $53,868.03 | Beginning Balance: | $0.00 |
| Average Balance: | $55,218.08 | Ending Balance: | $53,868.03 |
| Interest Paid This Statement: | $0.00 | Total No. of Additions: | 1 |
| Interest Paid Year to Date: | $0.00 | Total No. of Subtractions: | 4 |

| Date | Description | Additions | Subtractions | Balance |
|---|---|---|---|---|
| 10-08 | Beginning balance | | | $0.00 |
| 10-08 | Deposit | 64,000.00 | | 64,000.00 |
| 10-11 | | | | |
| 10-17 | | | | |
| 10-26 | | | | |
| 10-29 | | | | |
| 10-31 | **Ending totals** | **64,000.00** | **-10,131.97** | **$53,868.03** |



Deposit, Amount $64,000.00, Date 10/8

## 3 Easy Steps to Balance Your Account

**1.**
In your checkbook, mark off all checks that appear on your statement. Checks not appearing on your statement should be recorded in the Checks Outstanding column.

**2.**

| | | |
|---|---|---|
| Enter Your Checkbook Balance | | |
| Add any credits made to your account through transfers, interest, etc. as shown on this statement | | |
| (Be sure these items have been entered in your checkbook) | | |
| Subtotal | | |
| Subtract any account fees | | |
| Adjusted Checkbook Balance | **A** | |

**3.**

| | | |
|---|---|---|
| Enter the bank balance shown on this statement | | |
| Add deposits shown in your checkbook but not shown on this statement | | |
| Subtotal | | |
| Subtract the total amount of checks outstanding | | |
| Adjusted Bank Balance | **B** | |

Your checkbook is in balance if line A agrees with line B.

## Checks Outstanding

| Check No. | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| **Total** | |

**Questions about Statement Errors or Electronic Transfers?**
Please contact us within 30 days to report any unauthorized signature on or alteration of any item on your statement. Within 60 days, please report to us any other error, discrepancy, or any claim for credit or refund. You may write or telephone us at:

MidFirst Bank
P.O. Box 76149
Oklahoma City, OK 73147
1-888-MIDFIRST
405-943-8002 *(in the OKC area)*
918-610-8002 *(in the Tulsa area)*
602-229-8002 *(in the Phoenix area)*
303-376-3800 *(in the Denver area)*

When you report the problem or error, please be certain to do the following:
• Give us your name and account number.
• Describe the error or the transfer of which you are unsure, and explain as clearly as you can why you believe there is an error or why you need more information.
• Tell us the dollar amount of the suspected error.

We will investigate your complaint and correct any error promptly. If we take more than 10 business days to do this, we will re-credit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation.

If you have arranged to have direct deposits made to your account at least every 60 days from the same person or company, you can call us at one of the above listed numbers to find out whether or not the deposit has been made.

**Questions about MidFirst ATM or Check Card Procedures?**
You must notify us at once if you believe your card(s) and/or code has been lost, stolen or that someone has transferred or may transfer money from your account without your permission. If you tell us of the lost or stolen card(s) and/or code within 2 business days, you can lose no more than $50 if someone uses your card(s) without your permission. If you do not tell us within two business days after you learn about the loss or theft of your card(s) and/or code and we can prove we could have stopped someone from using your card(s) and or code without your permission if you had told us, you could lose as much as $500.

To report a lost or stolen ATM or Check Card during normal business hours call 1-888-MIDFIRST (643-3477). After business hours, please call 1-800-236-2442.